In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00053-CV
_____

STEPHEN HARTMAN, Appellant

V.

STEVEN BROUSSARD, Appellee

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-198,246

MEMORANDUM OPINION

Stephen Hartman appeals the trial court's order granting Steven Broussard's

plea to the jurisdiction and motion to dismiss.[1] Among other issues, Hartman argues

that the trial court erred when it granted the plea to the jurisdiction because, in this

lawsuit, he sued Broussard in his individual capacity and not Broussard's

_____

[1] Broussard filed a cross appeal but has subsequently notified this Court that
he is dismissing his cross appeal.

1

governmental employer and thus, section 101.106(a) of the Texas Tort Claims Act (TTCA) does not entitle Broussard to dismissal. Additionally, Hartman asserts that Broussard is not entitled to qualified or official immunity under subsection (f) of the TTCA as Broussard acted unlawfully, in bad faith, and outside the scope of his employment, and the trial court erred when it denied Hartman's motion for continuance. We affirm the judgment of the trial court.

## I. Background

The facts of this case have been discussed extensively in this Court's prior opinion. *See Walker v. Hartman*, 516 S.W.3d 71, 75–78 (Tex. App.—Beaumont 2017, pet. denied). Therefore, we only discuss the facts necessary for the resolution of the issues presently before the Court. Hartman is a licensed process server. Jefferson County employed Broussard as a sheriff's deputy, and he worked as a courtroom bailiff. On May 28, 2013, Hartman arrived at the Jefferson County Courthouse to serve Judge Layne Walker of the 252nd District Court with judicial process. Hartman had previously attempted to serve Walker at his residence, and according to Hartman, Walker and his son assaulted him. Concerned for his safety, Hartman intended to serve Walker at his place of employment. When Hartman arrived at the 252nd District Court, Walker was on the bench working the court's docket for that morning. Hartman states that he sat quietly in the gallery of the

2

courtroom and did not interrupt Walker while he was on the bench. During a break in the proceedings, Hartman stated that he quietly approached the bar of the courtroom and motioned for another bailiff to come and talk to him. Hartman asserts he never crossed the bar of the courtroom. After whispering to the bailiff that he needed to serve Walker with federal process papers, the bailiff did not respond to Hartman and immediately went to Broussard and whispered to him. Hartman states that he was "charged by Deputy Broussard" and arrested. After Broussard arrested Hartman, he placed Hartman in a holding cell. Deputies, including Broussard, confiscated his personal belongings, including a recording device. Hartman was held in the holding cell all day and was not informed of his charges until he was transferred to the Jefferson County Jail.[2] He was later allowed to serve Walker in the jury room of the 252nd courtroom.

Hartman alleged that Broussard illegally accessed his cell phone without a warrant and took Hartman's recording device to Broussard's home and downloaded the contents. Broussard then illegally viewed the contents of Hartman's recording device in Walker's chambers with several people present, including Walker, his courtroom staff, and other members of the Jefferson County Sheriff's Department.

---

[2] Hartman was charged with a "Class B misdemeanor of Hindering [a] Proceeding by Disorderly Conduct." *See* Tex. Penal Code. Ann. § 38.13. His charges were dismissed.

Hartman emphasizes that the Jefferson County Sheriff's Department Internal Affairs Department investigated Broussard's conduct and recommended that Broussard be terminated.

Hartman filed a federal lawsuit against Jefferson County, Broussard, Walker, the other bailiffs, sheriff's department employees, and individuals who witnessed Hartman's arrest and executed affidavits about the events of that morning in the courtroom. In his original federal complaint, Hartman asserted § 1983 claims against both Jefferson County and the individuals named in his lawsuit, and "against all Defendants . . . for numerous pendent state law claims." In his second amended complaint filed in federal court, Hartman alleged state tort claims against Jefferson County, and Broussard and other defendants in their individual capacity. Specifically, Hartman alleged that "Jefferson County acted through these individual state actor Defendants . . . to perpetrate constitutional deprivations and torts[.]"Jefferson County filed a Motion for Dismissal pursuant to section 101.106 of the Texas Tort Claims Act and an Amended Rule 12(b)(6) Motion to Dismiss. All of Hartman's claims were dismissed by the federal court.

Hartman then filed this lawsuit in state court alleging tort claims against State District Court Judge Walker, his bailiffs, sheriff's department employees, Walker's courtroom staff, and the individuals who executed certain affidavits, arising from

4

the same incident. Broussard filed a Plea to the Jurisdiction and/or Motion to Dismiss arguing that his case should be dismissed for lack of standing under the TTCA election of remedies, specifically sections 101.106(a), (e), and (f). Broussard argued that under section 101.106's election of remedies, Hartman's decision to sue both Jefferson County and Broussard (and other individual defendants) in his second amended federal complaint, and Jefferson County's subsequent motion to dismiss, triggered the TTCA's election of remedies requiring the state court to dismiss Hartman's suit against Broussard individually.

> Plaintiff's federal lawsuit [is] relevant to this Motion because Plaintiff's filing of his Second Amended Complaint in Federal Court, and the responses to same filed by the County and County Employees [(including Broussard)] establish that, at one time, Plaintiff brought Texas tort claims against both the County and the County Employees [(including Broussard)]. Likewise, Plaintiff was contending that the County was vicariously liable for the torts allegedly committed by the County Employees [(including Broussard)] because such employees [(including Broussard)] were acting in the course and scope of their employment. Once Plaintiff filed his Second Amended Complaint, the County filed its Amended 12(b)(6) Motion to Dismiss same, which invoked Section 101.106 of the TTCA, and the County Employees [(including Broussard)] filed their Motion to Dismiss under section 101.106 of the TTCA, Plaintiff's subsequent amendment to his complaint and, more specifically, the filing of suit in state court after his suit was dismissed in federal court, does not alter his election to proceed with his tort suit against only the County, and not against the County Employees [(including Broussard)].

Hartman answered arguing that he only sued Jefferson County under § 1983 in his federal lawsuit and not under the TTCA and that he sued Broussard (and the other

defendants) "in their individual capacities" for Texas torts. After a hearing on the motion, the trial court granted Broussard's motion and dismissed Hartman's claims against Broussard with prejudice. The trial court granted "Steven Broussard's Plea to the Jurisdiction and/or Motion to Dismiss under Tex. Civ. Prac. & Rem. Code Sections 101.106(a), (e) & (f) and For Lack of Standing and/or Alternative Motion for Summary Judgment." The trial court signed a separate order denying Hartman's motion for continuance. Hartman timely filed this interlocutory appeal.

## II. Standard of Review

Section 51.014 of the Texas Civil Practice and Remedies Code gives us jurisdiction over this interlocutory appeal of the trial court's order granting Broussard's plea to the jurisdiction. *See* Tex. Civ. Prac & Rem. Code Ann. § 51.014(a)(8); *see also Lenoir v. Marino*, 469 S.W.3d 669, 673 n.2 (Tex. App.— Houston [1st Dist.] 2015) (op. on reh'g), *aff'd*, 526 S.W.3d 403 (Tex. 2017). "A plea questioning the trial court's jurisdiction raises a question of law that we review *de novo*." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

6

# III. Analysis - TTCA and Election of Remedies

## A. Dismissal under Section 101.106(a) – Individual Capacity

We begin our analysis with Hartman's claim that he sued Broussard in his individual capacity. The TTCA provides for an election of remedies that forces a plaintiff at the outset of his lawsuit to determine whether to sue a government employee in their individual capacity or to sue the governmental employer. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a); *see also Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 657 (Tex. 2008). Once the Plaintiff makes this election, the TTCA "immediately and forever" bars the plaintiff from suing the other in the same capacity. *Molina v. Alvarado,* 463 S.W.3d 867, 870 (Tex. 2015) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a)–(b)).

> This [election of remedies] provision was incorporated into the TTCA to prevent plaintiffs from circumventing the TTCA's damages cap by suing government employees, who were, at that time, not protected. It was expanded in 2003, as part of a comprehensive effort to reform the tort system, with the apparent purpose of forcing a plaintiff "to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment, such that the governmental unit is vicariously liable."

*Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 846 (Tex. 2018) (citations omitted). The Texas Supreme Court has warned litigants to "proceed cautiously" before initiating suit under the TTCA because the election has "irrevocable consequences." *Garcia,* 253 S.W.3d at 657. While generally Texas Rule of Civil

7

Procedure 65 provides that any subsequent amended pleadings supersede the original filing, we defer to the statute if a statute provides contradictory language. *Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*, 542 S.W.3d 530, 538 (Tex. 2017); *see also* Tex. R. Civ. P. 65. Section 101.106(a) of the TTCA provides, "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). The statute specifically states that an election occurs when the government employer is sued and bars recovery against an *individual employee* of the governmental unit. *See id.* (emphasis added). Our sister court in Houston explained that

> [s]ection 101.106(a) refers to "[t]he filing of a suit under this chapter against a governmental unit;" it does not refer to the numerical designation in the caption of the pleading by which a plaintiff has filed suit against a governmental unit. The dispositive election occurs when the governmental employer is sued—regardless of whether the governmental employer is sued alone or in tandem with the employee, and regardless of whether the governmental employer is sued in the "original" petition or an "amended" petition.

*Hintz v. Lally*, 305 S.W.3d 761, 771 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).[3] Any subsequent pleadings cannot avoid the plaintiff's irrevocable election

---

[3] Hartman argues in this brief that *Hintz* supports his argument that TTCA's election of remedies "applies ONLY to the first petition and not to the contents of

8

to sue the governmental entity employer. *See Rios*, 542 S.W.3d at 538–39; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a).[4] Therefore, in determining the applicability of section 101.106(a), we examine the pleadings, which is not confined to his original petition, to determine when the Plaintiff first asserted allegations against the governmental unit prompting the government to file a motion to dismiss under the TTCA. *See Rios*, 542 S.W.3d at 538.

In his second amended complaint filed in the federal lawsuit, Hartman added Jefferson County as a defendant and pleaded the following language:

Hartman's Texas tort causes of action are set forth in this Complaint, and all incorporated into this section. The intentionally tortious misconduct of *each and all of the individual Defendants* also constitute negligence per se and gross negligence per se against Hartman[.] *All the individual Defendants[']* tortious misconduct proximately caused Hartman actual and compensatory damages. Hartman seeks to recover from *each and every individual Defendant* his compensatory or actual

amended petitions." We are unpersuaded by his argument as it directly contradicts the language of that opinion. *See Hintz v. Lally*, 305 S.W.3d 761, 771 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

[4] We examine Hartman's federal pleadings because as noted by the Texas Supreme Court in *Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*, it is the filing of the government's motion to dismiss, not its content, that triggers the right to dismissal. 542 S.W.3d 530, 538 (Tex. 2017). When Jefferson County filed a motion to dismiss in Hartman's federal lawsuit, that motion triggered section 101.106's election of remedies and section 101.106's application. Tex. Civ. Prac. & Rem. Code Ann. § 101.106; *see also Stinson v. Fontenot*, 435 S.W.3d 793, 794 (Tex. 2014) (affirming the court of appeals holding that Stinson's suit against the County in federal court entitled Fontenot to dismissal of the claims against him individually in the state court suit under the provisions of the TTCA).

9

damages proximately caused by the individual Defendants' Texas torts[.]

[ . . . ]

Hartman's tort claim for intentional infliction of emotional distress by all the *individual Defendants* is not a "gap-filler" tort in this case. All the Defendants' misconduct was truly extreme, outrageous, in open and notorious violation of law and the U.S. Constitution, and were all perpetrated for the specific purpose to cause Hartman severe emotional trauma[.]

(Emphasis added.)

Hartman's decision to sue both Broussard individually and his employer, Jefferson County, triggered subsection (a)'s election of remedies. "[S]ubsection (a) bars suit against an employee in his individual capacity." *Stinson v. Fontenot*, 435 S.W.3d 793, 794 (Tex. 2014) (citation omitted). "[U]nder subsection (a), suit against a governmental unit under the TTCA—i.e., filing a tort claim against the governmental unit—bars suit against an 'individual employee' of the unit regarding the same subject matter, regardless of whether immunity has been waived." *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 357 n.7 (Tex. 2013) (citations omitted). The Texas Supreme Court explained that "[t]he plain language of the election-of-remedies provision, then, demonstrates that a suit against the government triggers subsection (a)" and will bar a suit against an employee in his individual, rather than official, capacity. *See Alexander v. Walker*, 435 S.W.3d 789,

10

791 (Tex. 2014). Accordingly, subsection (a)'s applicability hinges on whether the suit is against the officer in his individual or official capacity. *See id.*

Hartman argues that subsection (a) of the election of remedies provision does not bar the current claims against Broussard because in his original federal court complaint, Hartman sued the County, Broussard, and other county employees for constitutional violations under 42 U.S.C. § 1983, and asserted other tort claims only against Broussard and the other individual Defendants. Hartman's Original Complaint filed in federal court alleged claims against the governmental employee defendants individually for state torts that were beyond the course and scope of their employment. Hartman makes the distinction that the original federal complaint did not assert claims against Jefferson County for torts. The whole of Hartman's appeal rests on his contention that the causes of action asserted in his Second Amended Complaint in the federal suit are irrelevant to and did not trigger the election of remedies provision of TTCA § 101.106(a), because a plaintiff's election of remedies occurs when a plaintiff initially files suit and is not affected by any subsequent amendments to those pleadings. However, his assertion is incorrect. His decision to sue the government and its employees in their *individual* capacity for alleged tortious conduct in the second amended federal complaint triggered section 101.106(a)'s mandatory dismissal of the individual defendants. This election is irrevocable, and

11

he is barred under section 101.106(a) from proceeding against the individual employees in their individual capacities.[5] Broussard is entitled to dismissal under section 101.106(a). "In short, section 101.106's door swings in just one direction." *Hintz*, 305 S.W.3d at 769. "This one-way door comports with the legislature's goal to address efforts to circumvent the Tort Claims Act's limits by litigants who sued

---

[5] The Supreme Court stated in *Mission Consol. Indep. Sch. Dist. v. Garcia* that

> [u]nder the Tort Claims Act's election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when suit is filed against the governmental unit only, [Tex. Civ. Prac. & Rem. Code Ann.] § 101.106(a); (2) when suit is filed against both the governmental unit and its employee, [Tex. Civ. Prac. & Rem. Code Ann.] § 101.106(e); or (3) when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit, [Tex. Civ. Prac. & Rem. Code Ann.] § 101.106(f).

253 S.W.3d 653, 657 (Tex. 2008). But, as noted by the Fourteenth Court of Appeals, although the Supreme Court in *Garcia* explained that subsection (a) bars recovery against an employee when the plaintiff sues *only* the government unit first, "the *Garcia* court did not state that this subsection applies only to situations in which the plaintiff sues the governmental unit alone." *Fontenot v. Stinson*, 369 S.W.3d 268, 275 n.9 (Tex. App.—Houston [14th Dist.], *aff'd, Stinson v. Fontenot*, 435 S.W.3d 793 (Tex. 2014). We agree that Hartman's election to not only sue Broussard in his individual capacity, but also to sue Jefferson County, triggered the application of subsection (a). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a); *see also Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014) (explaining subsection (a) applies when an employee has been sued in his individual and not official capacity); *see also Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 418 (Tex. 2015) (distinguishing that subsections (e) and (f) of the TTCA apply to prevent suits against employees "for conduct within the scope of their employment").

12

governmental employees *individually instead of their governmental employers.*" *Id.* (citation omitted) (emphasis added); *see Lenoir*, 469 S.W.3d at 675 (citations omitted) ("If the plaintiff sues the governmental unit, she is forever barred from suing the governmental unit's employees. . . . Because it is an irrevocable decision, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually. This law strongly favors dismissal of governmental employees. But claims against governmental employees may be pursued if they do not fall within the election of remedies categories created by section 101.106").[6]

In many ways, *Fontenot v. Stinson* is analogous to our case. 369 S.W.3d 268 (Tex. App.—Houston [14th Dist.], *aff'd*, *Stinson v. Fontenot*, 435 S.W.3d 793 (Tex. 2014). In *Fontenot,* the Fourteenth Court of Appeals held that a sheriff's deputy was entitled to dismissal of the plaintiff's claims because of the plaintiff's irrevocable

---

[6] While Hartman never asserts that his tort allegations come under the TTCA, we note that "[b]ecause the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the TTCA]' for purposes of section 101.106." *Garcia,* 253 S.W.3d at 659 (citation omitted). This is true for intentional torts, including malicious prosecution, official oppression and harassment claims. *Johnson v. Boehnke*, No. 03-19-00200-CV, 2019 WL 4458797, at *3 (Tex. App.—Austin Sept.18, 2019, no pet.) (mem. op.) (citations omitted).

election under the TTCA. *Id*. at 269. Tiffany Stinson filed suit against Sheriff's Deputy Stephen Fontenot for "various intentional torts, including slander, civil conspiracy, 'trespass, assault and battery, intentional infliction of emotional distress, wrongful arrest, false imprisonment, and malicious prosecution[.]'" *Id*. Subsequent to this filing, Stinson filed suit in federal court against Harris County and Sheriff Tommy Thomas. *Id*. After removal of her claim against Fontenot to federal court, Stinson's claims were consolidated. *Id*. at 270. Harris County and Sheriff Thomas then filed a Rule 12(b)(6) motion requesting dismissal of Stinson's complaints against them. *Id*. Ultimately, the federal court dismissed Stinson's claims against Harris County and Sheriff Thomas, and remanded Fontenot's case to state court for lack of subject matter jurisdiction. *Id*. Fontenot then moved for summary judgment arguing he was protected by immunity under the TTCA sections (a), (e), and (f). *See id.* The trial court denied Fontenot's motion, and his appeal to the Fourteenth Court of Appeals followed. *See id.*

In its decision, the Court of Appeals reasoned that Stinson's suit in Federal Court was brought "under this chapter" for purposes of the TTCA's election of remedies because "a suit alleging intentional torts against a governmental unit is a suit 'under this chapter' for purposes of subsection (a)." *Id.* at 272. The court noted that although Stinson attempted to allege § 1983 claims against Harris County, she

also "unambiguously" alleged common law torts against Harris County, and as such, her "broadly alleged tort claims" established that she filed suit against a governmental unit as provided in section 101.106(a).[7] *Id*. at 274–75. After determining the applicability of the TTCA election of remedies to Stinson's claims, the Court held that "when Stinson filed suit against Harris County, the filing constituted an irrevocable election against Harris County and immediately and forever barred any suit or recovery against Fontenot regarding the same subject matter." *Id*. at 276. The Court noted that "[t]his conclusion is not altered by the fact that her suit against Harris County was the second-filed suit." *Id*. Similarly, Hartman's claims against Broussard in his individual capacity are barred under the provisions of TTCA subsection (a).

---

[7] Although similar in many respects, one distinction in *Fontenot* was that the plaintiff sued Fontenot in his official capacity, whereas here, Hartman argues that he sued Broussard in his individual capacity. The Supreme Court affirmed *Fontenot*, but it noted that the lower court incorrectly applied section 101.106(a) because Fontenot was sued in his official capacity and not his individual capacity. *See Fontenot*, 435 S.W.3d at 794 ("[S]ubsection (f) is the appropriate avenue for dismissing a government employee considered to have been sued in his official capacity, while subsection (a) bars suit against an employee in his individual capacity."). Hartman affirms in his appellate brief that he is suing Broussard in his individual capacity only.

**B. Dismissal under Section 101.106(f) – Official Capacity**

While Hartman asserts in his brief that he is only suing Broussard in his individual capacity, in a separate issue on appeal, he challenges the trial court's order granting Broussard's plea to the jurisdiction on subsection (f) specifically. *See* Tex. Civ. Prac. & Rem. Code Ann. 101.106(f). Hartman alleges in various locations throughout his pleadings that Broussard's actions were at the directive of Walker and Jefferson County.

Section 101.106(f) of the TTCA applies when a government employee is sued in his official capacity. *Garza v. Harrison*, 574 S.W.3d 389, 393 (Tex. 2019). "[B]ecause an official-capacity suit against a public employee is merely another way of pleading an action against the governmental employer, on the employee's motion, section 101.106(f) compels an election that makes suit against the governmental employer the exclusive remedy for a public employee's conduct within the scope of employment." *Id.* at 399 (citations omitted). Subsection (f) requires dismissal of a suit against a government employee if the suit is based on "conduct within the general scope of that employee's employment" and, (2) "if it could have been brought under this chapter against the governmental unit[.]" Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *see also Lenoir*, 526 S.W.3d at 405. Dismissal under section 101.106(f) is properly reviewed *de novo*. *Garza*, 574 S.W.3d at 400.

16

### 1.  The Course and Scope of Employment

The applicability of subsection (f) hinges on whether Hartman sued Broussard in his official capacity. The first step in this analysis is to determine whether Broussard was acting within the course and scope of his employment when the alleged conduct occurred. Officials act within the scope of employment if their acts fall within the duties generally assigned to them. *Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 791 (Tex. App.—Dallas 2012, pet. denied) (citations omitted).

> The scope-of-employment analysis, therefore, remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to [their] job responsibilities.

*Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017) (citation omitted). Thus, even if acting to serve the purpose of a third person, as long as their conduct "falls within the duties assigned," the conduct is within the government employee's scope of employment. *Anderson v. Bessman*, 365 S.W.3d 119, 125–26 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted).

In his second amended federal complaint, Hartman does not dispute that Broussard is an employee of the Jefferson County Sheriff's Department. Hartman asserted that Broussard, along with the other defendants in the lawsuit, "acted in a civil conspiracy" and as a result, this conspiracy "caused Hartman to be maliciously

17

prosecuted[.]" Hartman also asserted that Broussard engaged in "intentional misconduct" that resulted in "constitutional deprivations" and "damages."

> As defined in the TTCA, "scope of employment" means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." An official acts within the scope of his authority if he is discharging the duties generally assigned to him. The dispositive question is: "[I]n what capacity was the officer acting at the time he committed the acts for which the complaint was made?"

*McFadden v. Olesky*, 517 S.W.3d 287, 296 (Tex. App.—Austin 2017, pet. denied) (citations omitted). This includes conduct when carrying out an assigned task that "escalates beyond that assigned or permitted." *Fink v. Anderson,* 477 S.W.3d 460, 466–67 (Tex. App.—Houston [1st Dist.] 2015, no pet.),

Despite Hartman's contention that he only sued Broussard individually, in various places throughout the pleadings, Hartman alleges Broussard's actions were all at the direction of Walker or Jefferson County. In his second amended federal complaint, Hartman states that "[Broussard] perpetrated multiple Texas Pen. Code violations and multiple constitutional deprivations intended to harm or damage Hartman, . . . and to implement the County's unconstitutional policies, practices, and customs to Hartman's detriment[.]" Hartman's claims of malicious prosecution and civil conspiracy are based on acts committed in Broussard's official capacity as a sheriff's deputy assigned to a district court. In his fifth amended state petition,

18

Hartman argues that Broussard, *all under the direction of Walker*, wrongfully arrested him in Walker's courtroom, illegally retrieved and downloaded a recording device, presented the contents of the recording device to Walker and his staff to view, and falsified probable cause affidavits that lead to his arrest. Broussard's alleged actions, while disturbing, fall under his employment as an officer of the Jefferson County Sheriff's Department and a bailiff in Judge Walker's Courtroom. "Police officers are governmental agents that derive all their powers under the law through their employing governmental entity." *Garza*, 574 S.W.3d at 401 (citations omitted). Hartman did not allege any "independent course of conduct by the officer[] not intended to serve any purpose of the [County]." *Alexander*, 435 S.W.3d at 792; *see also McFadden,* 517 S.W.3d at 297 (noting that an officer's preparation of an affidavit was within the scope of their employment, even if the officer provided false information on the affidavit); *Donohue v. Koehler*, No. 04-16-00190-CV, 2017 WL 943427, at *6 (Tex. App.—San Antonio Mar. 8, 2017, no pet.) (mem. op.) (explaining that the plaintiff's arrest was in the scope of the officer's employment because he did not allege an "independent course of conduct by [the officer] . . . intended to further his own purposes, only, rather than that of the . . . [Police Department]"). Hartman has not pleaded any facts that demonstrate that Broussard's actions fall outside of his employment. Allegations of Broussard's personal

19

motivation or that of a third party are of no consequence as long as Broussard's actions were in the course and scope of his employment. *See Weaver v. McKeever*, No. 01-12-00851-CV, 2014 WL 768297, at *4 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014, no pet.) (mem. op.) (citations omitted) ("[E]vidence that an employee brought personal motives to bear in executing his duties as assigned by his employer does not mean that his actions fall outside the scope of his employment."). As such, Hartman's claims against Broussard are brought under the course and scope of Broussard's employment. *Id.*

### 2. Government Employer

Having determined that Broussard's actions fall within the "scope of employment" as required by section 101.106(f), we next examine whether Hartman's claims "could have been brought under the [TTCA]" against his government employer. *See* Tex. Civ. Prac. & Rem. Code. Ann. § 101.106(f); *Alexander*, 435 S.W.3d at 792. Hartman argues that Broussard engaged in malicious prosecution, civil conspiracy and intentional misconduct. Civil conspiracy is an intentional tort that falls under the purview of the TTCA. *See City of Alamo v. Osuna*, No. 13-13-00317-CV, 2014 WL 6602387, at *5 (Tex. App.—Corpus Christi Nov. 20, 2014, no pet.) (mem. op.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (noting that the TTCA does not waive immunity for intentional torts). Likewise, the TTCA

20

applies to claims of malicious prosecution. *See Alexander*, 435 S.W.3d at 792 (reasoning that the plaintiff's malicious prosecution claims could have been brought under TTCA against the county); *see also McFadden*, 517 S.W.3d at 297–98 (concluding that a malicious prosecution claim could have been brought against the government employer as well as the employee under the TTCA). Hartman's claims against Broussard fall under the TTCA and could have been brought against Jefferson County. We conclude that because Hartman's claims could have been brought against Broussard in his official capacity and could have been brought against his government employer, he is entitled to immunity from civil liability under section 101.106(f).

Accordingly, we overrule Hartman's first issue under both sections 101.106(a) and (f).

## IV. Conclusion

Having overruled Hartman's first issue and determining that any further analysis of his remaining issues would grant him no greater relief under the law, we affirm the judgment of the trial court. [8]

---

[8] We need not reach Hartman's remaining issues on appeal, as it would afford Hartman no greater relief. *See* Tex. R. App. P. 47.1.

AFFIRMED.

                             _____

                                   CHARLES KREGER
                                        Justice

Submitted on June 10, 2019
Opinion Delivered February 6, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.